THE MINNEHAHA.

(District Court, S. D. New York. March 31, 1902.)

ADMIRALTY — ACTION FOR PENALTY UNDER HARTER ACT — PARTIES ENTITLED TO SUE—TEST CASE.

An action cannot be maintained to recover the penalty for a violation of Act Cong. Feb. 13, 1893, known as the "Harter Act," requiring the owner, master, or agents of any vessel transporting merchandise from or between ports of the United States and foreign ports to issue to shippers bills of lading or shipping documents, by a party put forward by an organization of lumber exporters for the mere purpose of making a test case, and not himself having any interest in the lumber shipped, not even being in the lumber business, where it further appeared that the lumber shipped was properly delivered at the destination, and that no one was injured.

In Admiralty. Action for penalty under the Harter Act.

John J. McKelvey, for libelant.
Convers & Kirlin, for claimant.

ADAMS, District Judge. This is an action brought by the libelant to recover such penalty as the court might fix, with costs, for a violation by the owners or agents of the steamship Minnehaha of the provisions of the act of congress of February 13, 1893, known as the "Harter Act." Sections 4 and 5 of the act provide:

"Section 4. That it shall be the duty of the owner or owners, masters, or agent of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to issue to shippers of any law-

ful merchandise a bill of lading, or shipping document, stating, among other things, the marks necessary for identification, number of packages, or quantity, stating whether it be carrier's or shipper's weight, and apparent order or condition of such merchandise or property delivered to and received by the owner, master, or agent of the vessel for transportation, and such document shall be prima facie evidence of the receipt of the merchandise therein described.

"Sec. 5. That for a violation of any of the provisions of this act the agent, owner, or master of the vessel guilty of such violation, and who refuses to issue on demand the bill of lading herein provided for, shall be liable to a fine not exceeding two thousand dollars. The amount of the fine and costs for such violation shall be a lien upon the vessel, whose agent, owner, or master is guilty of such violation, and such vessel may be libeled therefor in any district court of the United States, within whose jurisdiction the vessel may be found. One-half of such penalty shall go to the party injured by such violation and the remainder to the government of the United States."

It appears that the libelant was put forward by the National Lumber Exporters' Association, an organization of lumber exporters, for the purpose of making a test case, which would, if decided favorably to the libelant, as stated in the brief of the advocate for the libelant, "mean a warning to the ocean carriers that the law must be complied with, and an assurance to the shipper that he may demand his rights under the law without running the risk of a boycott by the carriers." It is shown that the organization, in December, 1891, arranged a plan of shipping to London two car loads of lumber in the libelant's name upon one of the claimant's steamers, with a view of exacting such bill of lading as the members thought they would be entitled to under the act. The shipment was made, and the shippers obtained two receipts therefor, in the name of the libelant, from the claimant for the lumber, which was delivered to the steamer in question, each containing the words "More or less," "Not accountable for marks or splits." These receipts were afterwards presented at the claimant's office with bills of lading prepared for the association by certain freight brokers, which did not contain the quoted words. The bill of lading clerk of the claimant took the papers, and, after stamping on the bills of lading the words, "More or less all on board to be delivered," "Not responsible for marks or splits," signed and returned the bills of lading, retaining the receipts. These bills of lading were accepted at the time in lieu of the receipts, but afterwards the libelant, claiming that they were not in conformity with the statute, returned them with a demand that a bill of lading be issued to him for the lumber received, stating, among other things, the number of packages of lumber and the number of pieces, or the number of feet of lumber not made up into packages, without any qualification. The claimant contends that it did furnish shipping documents in conformity with the statute.

I do not think it necessary to enter into the merits of the controversy, because it is clear at the outset that the libelant has no interest whatever in the matter, and is not entitled to recover. The lumber was not his, and there was no way in which he could possibly have been identified with any loss or damage which could occur. He was not in the lumber business, and did not even have such a general interest as that fact might have given him. He was

a mere figurehead or dummy in the transaction, and not only did not suffer any injury, but could not possibly have suffered any. Indeed, it appears affirmatively that the lumber was properly delivered at its destination, and that no one was or could be injured in the matter. I do not see how the statute can be invoked under the circumstances. It seems that the court is not asked to decide a real case but merely to express an opinion which might hereafter be of some possible advantage to lumber exporters. Courts do not sit for such a purpose. Legal actions are designed to afford redress for injuries already inflicted and rights of persons or property actually invaded, not to pass upon abstract questions of law for the benefit of individuals who may desire the court's opinion for their benefit, or, as stated here, to be a warning or menace to others. Thomas v. Protective Union, 121 N. Y. 45, 24 N. E. 24, 8 L. R. A. 175.

Libel dismissed.